UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALFRED ELLIOTT,

    Plaintiff,

    v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

Civil Action No. 04-1702 (CKK)

**MEMORANDUM OPINION**
(November 13, 2007)

Currently pending before the Court is Plaintiff's Augmented Opposition to Defendant's

Motion for Summary Judgment as to Plaintiff's claim that Defendant Federal Bureau of Prisons

("BOP") violated the Privacy Act, 5 U.S.C. § 552a.  In addition, Plaintiff has filed a Motion for

Leave to File Amended and Supplemental Complaint, seeking to amend his Privacy Act claim

and to add two additional claims to this action.  Defendant maintains that Plaintiff's original

Privacy Act claim should be dismissed and opposes Plaintiff's Motion for Leave to File.  Upon a

searching review of the filings submitted by both parties, the exhibits attached thereto, the

relevant statutes and caselaw, and the entire record herein, the Court shall grant Defendant's

Motion for Summary Judgment with respect to Plaintiff's original Privacy Act claim, and shall

deny Plaintiff's Motion for Leave to File, finding that Plaintiff's proposed amendment would be

futile.  In light of these actions, the Court shall dismiss this action in its entirety.

## I. BACKGROUND

The Court shall assume familiarity with its October 17, 2006 and December 27, 2006

Memorandum Opinions, which set forth in detail the factual background of this case, and shall

therefore only briefly address such facts as are necessary for resolution of the motions currently

before the Court.  Plaintiff Alfred Elliot[1] is a federal prisoner currently serving a 36-month

sentence imposed on May 22, 2007.[2]  Pl.'s Aug. Opp'n at 2 n.1.  Plaintiff alleges that he has

suffered and continues to suffer from a number of ailments and diseases, and that he has

undergone a number of medical procedures between 2001 and 2004.  Mem. Op. at 3-4.[3]  On

October 4, 2004, Plaintiff filed a one-count Complaint with this Court, alleging that the BOP

violated the Privacy Act by using a pre-sentence report prepared in 1989 (when Plaintiff was 45

years old and in better health) in determining that Plaintiff should serve a period of incarceration

at the Federal Correctional Institution in Forrest City, Arkansas ("FCI-Forrest City").  *Id.* at 4

(citing Compl. ¶ 3).  Plaintiff subsequently filed his First Amended Complaint, in which he

---

[1]  The Court notes that, although Plaintiff is proceeding in this action *pro se*, "Plaintiff received his law degree from the University of Chicago in 1969 and was certified as a trial lawyer by the U.S. District Court for the Northern District of Illinois."  *Elliott v. BOP*, Civil Action No. 04-1702, Memorandum Opinion (D.D.C. Oct. 17, 2006) (hereinafter "Mem. Op.") at 2 n.2 (citing Pl.'s Reply Mem. in Response to Def.'s Opp'n to Pl.'s Mot. for Sanctions at 2 n.2).

[2]  At the time that he filed this action, Plaintiff was serving a five-year federal sentence for Wire Fraud, Securities Fraud, Racketeering, and Filing False Income Tax Return.  Mem. Op. at 2.  According to Plaintiff's Augmented Opposition, that sentence was completed on September 10, 2006 by virtue of Plaintiff's being paroled as of that date.  Pl.'s Aug. Opp'n at 2 n.1.  Plaintiff is now serving a 36-month sentence imposed on May 22, 2007 for having failed to appear to serve his first sentence, as he was ordered by the Court to do in 1989.  *Id.*; Mem. Op. at 2.

[3]  Plaintiff's alleged ailments include a heart attack, diabetic atherosclerosis, angina, post-heart surgery infection, 24 hour-a-day pain, pleural effusions, hypertension, fatigue, dizziness and frequent urination due to medication, poliuria, obstructive sleep apnea, gastroesophageal reflux disease, diabetes mellitus, herniated disc, chest and back pain, prostatic hyperplasia, benign prostatic hyperplasia, morbid obesity, and an encased left lung.  First Am. Compl. ¶¶ 5(a)-(w).  Plaintiff also asserts that he underwent a number of medical procedures between 2001 and 2004, including coronary bypass surgery, four angioplasty procedures, and surgical reconstruction of his chest.  *Id.* ¶¶ 5(a), (d).

maintained his Privacy Act claim as Count I, and added two additional claims under the Americans with Disabilities Act ("ADA") (Count II) and the Rehabilitation Act ("RA") (Count III). *Id.* at 6-7 (citing First Am. Compl. ¶ 14-33).

In its October 17, 2006 Memorandum Opinion, the Court granted Defendant's Motion for Summary Judgment as to Plaintiff's Privacy Act claim and dismissed Plaintiff's ADA and RA claims. The Court's grant of summary judgment was based on a finding that Plaintiff had "presented no evidence that the BOP's determination to designate him for service at FCI-Forrest City constituted an intentional or willful violation of the Privacy Act," and that Plaintiff therefore could not prevail on his claim for monetary damages under Section (g)(4) of the Privacy Act as a matter of law. *Id.* at 24-25 (citing *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996)). Plaintiff subsequently filed a Motion for Relief from Summary Judgment under Federal Rule of Civil Procedure 60(b), arguing that he was entitled to reasonable discovery relating to his Privacy Act claim before this Court granted Defendant's Motion for Summary Judgment. The Court granted Plaintiff's motion in its December 27, 2006 Memorandum Opinion. *Elliott v. Fed. Bureau of Prisons*, Civil Action No. 04-1702, 2006 WL 3826930, at * 5 (D.D.C. Dec. 27, 2006). That Opinion allowed the parties the opportunity to "complete discovery as to the very discrete issue of whether Defendant willfully or intentionally violated the Privacy Act," and allowed Plaintiff to file an augmented opposition to Defendant's Motion for Summary Judgment setting forth facts relevant to that issue. *Id.*

After several extensions, Plaintiff has now filed his Augmented Opposition to Defendant's Motion for Summary Judgment, to which the BOP has responded. *See generally* Pl.'s Aug. Opp'n; Def.'s Reply. In addition, basically conceding that the information obtained

during discovery indicates that he cannot demonstrate a Privacy Act violation as originally

alleged, Plaintiff has moved for leave to file an amended and supplemental complaint, an effort

that Defendant opposes.  *See generally* Pl.'s Mot. for Leave to File; Def.'s Opp'n.  Plaintiff's

proposed Amended and Supplemental Complaint includes a revised Privacy Act claim that

reflects the information learned during discovery in this action, as well as two new claims–one

pursuant to the Administrative Procedure Act ("APA"), the other pursuant to the Religious

Freedom Restoration Act ("RFRA")–however, in his Reply, Plaintiff indicates that he no longer

wishes to pursue an APA claim in this action.  *See generally* Am. and Suppl. Compl.; Pl.'s Reply

at 2 (indicating that Plaintiff has filed a petition for a writ of habeas corpus in the United States

District Court for the Eastern District of Arkansas concerning the matters described in his

proposed APA claim).

## II.  LEGAL STANDARDS

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, "bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff, in response to

Defendants' motion, must "go beyond the pleadings and by [its] own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Id.* at 324.

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52, (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III.  DISCUSSION

*A.      Plaintiff's Original Privacy Act Claim Cannot Survive Summary Judgment*

Subsection (e)(5) of the Privacy Act requires an agency that keeps a system of records to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. § 552a(e)(5).  Subsection (g)(1)(C) provides a civil remedy if an agency fails to satisfy the standard of subsection (e)(5) "and consequently a determination is made which is adverse to the individual."  *Id.* § (g)(1)(C). Pursuant to subsection (g)(4), a plaintiff bringing an action under subsection (g)(1)(C) may recover actual damages if "the court determines that the agency acted in a manner which was intentional or willful."  *Id.* § (g)(4).  Thus, to prevail on his claim for money damages under the Privacy Act, Plaintiff must prove that:

> (1) he has been aggrieved by an adverse determination; (2) [the BOP] failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) [the BOP']s reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) [the BOP] acted intentionally or willfully in failing to maintain accurate records.

*Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996) (citations omitted); *see also Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002).

Plaintiff's original Privacy Act claim alleged that the BOP violated the Privacy Act by using a pre-sentence report prepared in 1989 in determining that Plaintiff should be designated for service at FCI-Forrest City because the 1989 pre-sentence report did not accurately reflect the state of Plaintiff's health as of the June 2004 designation date.  First Am. Compl. ¶ 5.  Plaintiff further claimed that the BOP's alleged Privacy Act violation was willful or intentional, *id.* ¶ 6,

and that the BOP's decision to send Plaintiff to FCI-Forrest City constituted an adverse

determination because FCI-Forrest City "refused to provide Plaintiff with appropriate medical

care; was deliberately indifferent to Plaintiff's serious medical problems; and routinely refused to

follow BOP's own written policies regarding medical care." *Id.* ¶¶ 7-8.  Plaintiff did not assert

that his health was actually damaged in any way by the BOP's alleged Privacy Act violation.

In initially granting summary judgment for the BOP with respect to Plaintiff's Privacy

Act claim, the Court made certain assumptions, in order to reach the more significant issue of

whether Plaintiff could demonstrate an intentional or willful violation of the Privacy Act.

Specifically, the Court assumed that "sufficient evidence exist[ed] in the record to demonstrate

that Defendant based Plaintiff's initial designation to FCI-Forrest City on an incomplete or

inaccurate record," because the only record apparently relied on in making that designation was

the 1989 pre-sentence report.  Mem. Op. at 18-20.[4]  The Court further assumed that Plaintiff's

initial designation constituted an "adverse determination" under the Privacy Act.  *Id.* at 20-21.[5]

---

[4] In making this assumption, the Court relied upon the D.C. Circuit's statement that where "the information contained in an agency's files is capable of being verified then, under sections e(5) and (g)(1)(c) of the [Privacy] Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual." Mem. Op. at 19 (quoting *Sellers v. Bureau of Prisons*, 959 F.2d 307, 366 (D.C. Cir. 1992)).  This assumption was based implicitly on Plaintiff's allegation that the BOP based his initial designation to FCI-Forrest City on inaccurate or incomplete records.  However, the Court notes that as discussed in greater detail below, any obligations the BOP might have to obtain Plaintiff's medical records from his previous physicians would only be triggered at the point that the BOP considered Plaintiff's medical history in making a determination affecting his rights, benefits, entitlements or opportunities, i.e., in deciding where Plaintiff would initially be designated for service.  *See Deters*, 85 F.3d at 660.

[5] Plaintiff's original Privacy Act claim alleged that the BOP based his initial designation to FCI-Forrest City upon inaccurate or incomplete records.  Because Plaintiff's initial designation to FCI-Forrest City was a determination affecting his rights, benefits, entitlements or opportunities, *see Deters*, 85 F.3d at 659, the Court assumed *arguendo* that it constituted an

The Court concluded that summary judgment was warranted, however, because Plaintiff had

"presented no evidence that the BOP's determination to designate him for service at FCI-Forrest

City constituted an intentional or willful violation of the Privacy Act."  *Id.* at 21-25.  Plaintiff has

now had the opportunity to pursue discovery regarding just that issue, i.e., whether the BOP

intentionally or willfully violated the Privacy Act in designating Plaintiff for service at FCI-

Forrest City in June 2004 based on the 1989 pre-sentence report.

     The record following discovery reveals that summary judgment is still appropriate with

respect to Plaintiff's original Privacy Act claim.  Indeed, Plaintiff does not contest this

conclusion, as he notes in his Reply in support of his Motion for Leave to File that the "evidence

obtained so far shows that the willful or intentional violation of the Privacy Act . . . took place

after his arrival at FCC Forrest City."  Pl.'s Reply at 3.  As the Court noted in its October 17,

2006 Memorandum Opinion, BOP policy provides that "[i]f offense or background information

is not available prior to designation, an inmate must be designated to at least a Low security level

institution.  When information is obtained, the institution may request redesignation, if

appropriate."  Mem. Op. at 23 (citing http://www.bop.gov, Policy P5100.08, 9/12/2006, Chapter

3, Page 2).  The record evidence suggests that the BOP complied with this policy, because the

information available prior to Plaintiff's initial designation was the 1989 pre-sentence report.

Plaintiff was designated for service at FCI-Forrest City on either June 3 or June 4, 2004, and

---

adverse determination.  Mem. Op. at 20-21.  As discussed in detail below, it is clear based on the
evidentiary record that Plaintiff cannot demonstrate a Privacy Act violation with respect to his
initial designation to FCI-Forrest City.  Furthermore, an analysis of Plaintiff's proposed
Amended and Supplemental Complaint reveals that he fails to allege that any other adverse
determination was proximately caused by the BOP's reliance on incomplete or inaccurate
records.

Plaintiff himself asserts that the BOP's June 3, 2004 designation form reflects only his history of type 2 diabetes and notes that Plaintiff "takes no meds." Pl.'s Aug. Opp'n at 2, 7; *see also* Pl.'s Evid. Submiss. in Support of Pl.'s Aug. Opp'n to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Evid. Submiss.") at 14 (Def.'s Resp. to Pl.'s Interrogs., Resp. to Interrog. 1).[6] The BOP admits that it began receiving information regarding Plaintiff's medical conditions as of June 5, 2004, *see* Pl.'s Evid. Submiss. at 15-17 (Def.'s Resp. to Interrogs. 2, 12); however, there is no evidence whatsoever in the record that the BOP was aware of any potential inaccuracy in the 1989 pre-sentence report as to Plaintiff's medical condition when it initially designated Plaintiff for service at FCI-Forrest City.

In order to establish that the BOP acted intentionally or willfully, Plaintiff "must prove that the agency 'acted with something greater than gross negligence.'" *Deters*, 85 F.3d at 660 (citing *Tijerina v. Walters*, 832 F.2d 789, 799 (D.C. Cir. 1987)). An intentional or willful Privacy Act violation is defined as one that is "so 'patently egregious and unlawful' that anyone undertaking the conduct should have known it 'unlawful.'" *Laningham*, 813 F.2d at 1242 (citing *Wisdom v. Dep't of Hous. & Urban Dev.*, 713 F.2d 422, 425 (8th Cir. 1983), *cert. denied*, 465 U.S. 1021, 104 S. Ct. 1272, 79 L. Ed. 2d 678 (1984)). An agency acts intentionally "either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding

---

[6] Plaintiff does not proffer a copy of the June 3, 2004 designation form. Plaintiff appears to suggest that the BOP may have known of "his many medical problems and his extensive prescription drug use" as of June 3, 2004 because it classified him as a care level 3 inmate, which was "defined as medically complex outpatients that require at least monthly clinical evaluations and may have limitations in their ability to perform activities of daily living, but do not require daily nursing care." Pl.'s Aug. Opp'n at 7 (quoting Pl.'s Evid. Submiss. at 15 (Def.'s Resp. to Interrog. 4)). Plaintiff's classification as a care level 3 inmate, however, is not inherently inconsistent with his assertion that the BOP was aware of his type 2 diabetes as of June 3, 2004.

others' rights under the Act." *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984)

(citing *United States v. Murdock*, 290 U.S. 389, 394-95, 54 S. Ct. 223, 78 L. Ed. 381 (1933)).

Furthermore, "the 'intentional or willful' action requirement of Section 552a(g)(4) refers only to

the intentional or willful failure of the agency to abide by the Act, and not to all voluntary actions

which might otherwise inadvertently contravene one of the Act's strictures." *Id.*

  The record evidence fails to demonstrate that the BOP was aware of any potential

inaccuracy in Plaintiff's medical records at the time that Plaintiff was initially designated for

service at FCI-Forrest City, but rather suggests that the BOP complied with internal policy.  The

Court therefore finds that no genuine issue of material fact exists as to whether BOP intentionally

or willfully violated the Privacy Act when it designated Plaintiff for service at FCI-Forrest City

based on the 1989 pre-sentence report, and Plaintiff agrees with this conclusion.  As such, the

Court again concludes that Defendant is entitled to summary judgment with respect to Plaintiff's

original Privacy Act claim.

  B. *Plaintiff's Motion for Leave to File Shall Be Denied Because His Proposed Amendments Would Be Futile*

  Because the Court previously dismissed the ADA and RA claims contained in Plaintiff's

First Amended Complaint, the Court's grant of summary judgment as to Plaintiff's original

Privacy Act claim would ordinarily necessitate dismissal of this action.  Plaintiff attempts to

prevent this step with his Motion for Leave to File Amended and Supplemental Complaint.

Defendant opposes Plaintiff's Motion for Leave to File, arguing primarily that the claims

Plaintiff seeks to assert in his proposed Amended and Supplemental Complaint would not

survive a motion to dismiss or motion to transfer venue.  The Court agrees with Defendant that

Plaintiff's proposed amendments would be futile, and shall therefore deny Plaintiff's Motion for Leave to File.

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of right at any time before a responsive pleading is served.  *See* Fed. R. Civ. P. 15(a). Once a responsive pleading is served, however, a party may amend its complaint only by leave of the court or by written consent of the adverse party.  *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The grant or denial of leave to amend is committed to the sound discretion of the district court, *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996); however Rule 15 specifically provides that leave is to be "freely given when justice so requires," *id.*; *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman*, 371 U.S. at 182.  Nevertheless, the Court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss.  *James Madison*, *Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also* 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

Plaintiff's proposed Amended and Supplemental Complaint contains three counts: a revised Privacy Act claim (Count I), an APA claim regarding the BOP's alleged deferral of Plaintiff's transfer to a Community Corrections Center (Count II), and a claim pursuant to the Religious Freedom Restoration Act alleging that Plaintiff's "ability to observe and practice his

religious beliefs has been burdened by BOP policies and procedures, or by conduct tolerated by the BOP, all in violation of rights granted to him by the [RFRA], and by the First Amendment to the United States Constitution" (Count III). *See* Am. and Suppl. Compl. ¶ 32. As noted above, in his Reply in support of his Motion for Leave to File, Plaintiff asserts that he has recently filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Arkansas concerning the matter referred to in Count II, such that Count II would not be filed if he were granted leave to amend his complaint. Pl.'s Reply at 2. The Court therefore limits its consideration to Counts I and III of Plaintiff's proposed Amended and Supplemental Complaint, and addresses them in reverse order.

The BOP correctly asserts that Count III could not survive a motion to dismiss because Plaintiff has failed to exhaust the administrative remedies available to him with respect to his RFRA claim. The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Furthermore, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Indeed, prisoners must "exhaust administrative remedies even where the relief sought - monetary damages - cannot be granted by the administrative process," *id.* (citing *Booth* at 734, 121 S. Ct. 1819), and "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983," *id.* (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Moreover, the BOP has established specific procedures for exhaustion of administrative

remedies.  28 C.F.R. § 542.13-15.

The exhaustion requirement clearly applies to Plaintiff's Count III because it contains allegations relating to "prison circumstances or occurrences."  *See Porter*, 534 U.S. at 520. Plaintiff does not dispute this, but rather asserts that the BOP's exhaustion argument is premature because Plaintiff has not yet filed his Amended and Supplemental Complaint, and "attached a draft of it to his motion for leave to amend as is typically done to assist the Court."  Pl.'s Reply. at 1-2.[7]  According to Plaintiff, the Court should grant him leave now to eventually amend his complaint, and he will comply with the PLRA's exhaustion requirement before he actually files his amended complaint.  *Id.*  Plaintiff's argument fails, however, because it ignores the purposes of the PLRA exhaustion requirement.  As the Supreme Court has explained, the exhaustion requirement (1) "protects administrative agency authority" by allowing an agency an opportunity to correct its own mistakes and discouraging disregard of the agency's procedures;  (2) "promotes efficiency" because claims can generally be resolved more quickly and economically in agency proceedings; and (3) "may produce a useful record for subsequent judicial

---

[7] The BOP's assertion that Plaintiff has failed to exhaust his administrative remedies is substantiated by the October 1, 2007 Declaration of James D. Crook, Supervisory Attorney at the United States Department of Justice, Federal Bureau of Prisons Consolidated Legal Center in Oklahoma City, Oklahoma, attached as an exhibit to the BOP's Opposition.  In that Declaration, Mr. Crook asserts that information related to administrative complaints filed by inmates is compiled in a national database called "SENTRY" and that "[a] review of the SENTRY database as it pertains to plaintiff's administrative remedies reveals that, according to Bureau of Prisons records, the plaintiff has not exhausted his Administrative Remedies . . . with regards to his claims contained in his amended complaint."  10/1/07 Decl. of James D. Crook ¶¶ 13, 18.  Mr. Crook's assertion is supported by a copy of the SENTRY Administrative Remedy Generalized Retrieval for Plaintiff.  *Id.* at Attach. 1.  Although that printout suggests that Plaintiff may have complained on two occasions that he was not given Kosher food when sent to Galveston, it is silent with regards to the general allegations included in Plaintiff's Amended and Supplemental Complaint.  *Id.*

consideration." *Woodford*, 126 S. Ct. at 2384-85.  The  hope of the exhaustion requirement is that by pursuing his administrative remedies, Plaintiff may resolve his RFRA claim without resort to judicial proceedings.  In contrast, Plaintiff basically asks the Court to assume that any administrative proceedings will fail, and allow Plaintiff leave to amend his complaint when that eventuality occurs.  The Court declines Plaintiff's invitation.  As Plaintiff does not contest that he has failed to exhaust his administrative remedies with respect to the allegations contained in his proposed Count III, the Court concludes that that Count could not survive a motion to dismiss. Plaintiff's Motion for Leave to File is therefore futile with respect to his proposed Count III.

The BOP also asserts–and Mr. Crook's Declaration and the attached exhibit confirm–that Plaintiff has not exhausted his administrative remedies with respect to his claims regarding the medical treatment he has received from the BOP, nor administratively raised his claims regarding the accuracy of his medical records.  Def.'s Opp'n at 4, n.5.  In its October 17, 2007 Memorandum Opinion, the Court addressed the BOP's argument that Plaintiff had failed to exhaust his administrative remedies with respect to his Privacy Act claim by noting that Plaintiff alleged that he was prevented from doing so because the staff at FCI-Forrest City refused to give him the form necessary for filing an administrative complaint.  *See* Mem. Op. at 17.  As Plaintiff was entitled to the benefit of all favorable inferences at the motion to dismiss stage, the Court assumed Plaintiff had exhausted such administrative remedies as were "available" to him.  *Id.* Here, in contrast, there is no question that Plaintiff has not attempted to exhaust his administrative remedies because Plaintiff admits as much.  The Court could therefore find Plaintiff's proposed amendments to his Privacy Act claim futile and deny his Motion for Leave to File solely on that ground.

The Court need not rely solely on those grounds however, because a review of Plaintiff's proposed revised Privacy Act claim reveals that it also would not survive a motion to dismiss for failure to state a claim.  As an initial matter, Plaintiff's proposed revisions to Count I include a number of allegations regarding the BOP's June 3, 2004 designation of Plaintiff for service at FCI-Forrest City; however, Plaintiff still fails to allege that the BOP was aware of any potential inaccuracy in Plaintiff's medical records at the time of his initial designation, despite the fact that the Court specifically gave him the opportunity to do so in allowing him to augment his Opposition to the BOP's motion for summary judgment.  *See* Am. and Suppl. Compl. ¶¶ 5-12. Based on the Court's conclusions above, it is clear that Plaintiff's proposed amendments to his Privacy Act claim would be futile to the extent that they relate to his initial June 3, 2004 designation.

Plaintiff's proposed Amended and Supplemental Complaint also includes a number of new allegations that expand the scope of his Privacy Act claim beyond his initial designation. Specifically, Plaintiff alleges at length that he "attempted to inform the medical staff at FCC-Forrest City of his cardiovascular problems." *Id.* ¶ 14.  According to Plaintiff, despite these attempts Dr. Edna Prince, the Clinical Director at FCI-Forrest City, submitted a declaration to the United States District Court for the Eastern District of Arkansas "in which she claimed that she had no evidence that [Plaintiff] had any cardiac condition . . . and claimed that it was his responsibility to provide medical history information from his physicians." *Id.* ¶¶ 14-15. Plaintiff alleges that the BOP's records regarding his medical history have not been, and still are not, accurate or complete and that Plaintiff has suffered a number of adverse determinations as a result "including, but not limited to, determinations as to where he should serve his sentence; the

type of medical treatment he should receive, and when he should receive it; his location within BOP housing; and the manner of his transportation from one institution to another." *Id.* ¶ 17. Plaintiff asserts that the BOP's violations of the Privacy Act were willful or intentional because he "informed the BOP that its records were incomplete and inaccurate" but the "BOP refused to obtain accurate information from third-party sources . . .[and] wrongfully refused to accept [Plaintiff's] medical history directly from him." *Id.* ¶ 18.  As further evidence that the BOP acted willfully or intentionally, Plaintiff asserts that Dr. Prince "tried to shift the responsibility for obtaining accurate medical records to [Plaintiff], and filed a declaration in federal court falsely claiming that she had no evidence that [Plaintiff] had any cardiac condition." *Id.*

The Court notes that Plaintiff moved for leave to amend his complaint after conducting discovery, which he admits revealed that the BOP's initial designation was not an intentional or willful violation of the Privacy Act.  *See* Pl.'s Reply at 3.  As such, in considering whether Plaintiff's proposed amendment would be futile, the Court is cognizant that Plaintiff has already conducted discovery regarding his Privacy Act allegations and, by his own assertion, seeks to amend his complaint in order to conform it to the evidence. *Id.*[8]  When the allegations of Plaintiff's proposed Amended and Supplemental Complaint are viewed in connection with the evidence that Plaintiff proffered in opposing the BOP's Motion for Summary Judgment, it becomes clear that Plaintiff's proposed amendment would be futile.[9]  Plaintiff's proffered

_____

[8] Plaintiff has not actually moved, pursuant to Federal Rule of Civil Procedure 15(b), to amend his pleading to conform to the evidence.  Rather, Plaintiff has moved for leave to file an Amended and Supplemental Complaint, pursuant to Rules 15(a) and 15(d).

[9] The Court does not know whether Plaintiff would seek to conduct additional discovery if he were granted leave to amend his Privacy Act claim; however, the Court notes that Plaintiff has already conducted very broad discovery as to his original Privacy Act claim.  For instance,

evidence provides specificity as to the timeline of events generally described in Plaintiff's

proposed Amended and Supplemental Complaint, which can be broken down into roughly three

time periods.

First, although the BOP did not have evidence of Plaintiff's myriad health problems

(beyond his type 2 diabetes) at the time of his initial designation, the BOP admits that it

"obtained information regarding [Plaintiff's insulin use, coronary artery bypass grafting

procedure, coronary angioplasty, hypertension, coronary artery disease, myocardial infarction,

and myocardial insufficiency] from June 5, 2004 through July 20, 2004."  Pl.'s Evid. Submiss. at

17 (Def.'s Resp. to Interrog. 12).  Plaintiff cannot base a Privacy Act claim on events during this

time period, however, because he does not assert that the BOP was aware of any inaccuracies or

incompleteness in Plaintiff's medical records during this period and the record includes no

evidence of such awareness.  *See* Pl.'s Aug. Opp'n at 2 (asserting that "[b]y not later than August

3, 2004, the BOP knew that its medical records regarding [Plaintiff's] medical history were

neither accurate nor complete.").  For the reasons discussed above in connection with Plaintiff's

initial designation, if the BOP was unaware of any potential inaccuracy in Plaintiff's medical

records, it could not have willfully or intentionally violated the Privacy Act by failing to remedy

--------

Plaintiff's First Request for Production of Documents, to which the BOP responded in April of
2007, requested "All documents containing information regarding Plaintiff's health or any
medical services which may have been provided to him, at any time, including, without limiting
the generality of the foregoing, Plaintiff's medical file."  Pl.'s Evid. Submiss. at 11 (Def.'s Resp.
to Pl.'s First Req. for Prod. of Docs).  It is therefore unclear that Plaintiff could pursue additional
discovery with respect to his proposed revisions to Count I.  Further discovery also appears
unwarranted in light of the fact that Plaintiff has moved for leave to amend based on the
discovery he has already conducted, Pl.'s Reply at 3, and the fact that the evidence Plaintiff
himself proffered in opposition to the BOP's Motion for Summary Judgment shows that his
proposed amendment would be futile.

such an alleged inaccuracy.

At the other end of the timeline, Plaintiff's proffered evidence and his Augmented
Opposition establish that he was seen by a cardiologist, Dr. Lee Edwin Faulkner, on October 20,
2004, and that Dr. Faulkner submitted a written report of that visit to the BOP.  *See* Pl.'s Aug.
Opp'n at 5; Pl.'s Evid. Submiss. at 22-24 (10/20/04 Faulkner Consult. Report).  The BOP
produced Dr. Faulkner's Consultation Report to Plaintiff during discovery in this action, and the
Report is stamped and signed by a Dr. E. Kineish at FCI-Forrest City, whom Plaintiff saw upon
returning from his appointment with Dr. Faulkner.  *See* Pl.'s Aug. Opp'n at 5; Pl.'s Evid.
Submiss. at 25 (10/20/04 Chronolog. Record of Med. Care noting "Returned from a hospital trip
where he saw the cardiologist. . . ."); Pl.'s Evid. Submiss. at 2 (Index, noting documents that
were produced by the BOP in response to Plaintiff's discovery requests).  Dr. Faulkner's Report
indicates that Plaintiff had previously undergone a coronary artery bypass grafting procedure, had
four stents implanted, "complains of chest pain with radiation to his left arm, as well as, jaw pain
with exertion . . . [and] complains of taking more and more Nitroglycerin as time progresses."
Pl.'s Evid. Submiss at 22.  In addition, under the heading "Impression," Dr. Faulkner's Report
notes "1. Angina Pectoris, unstable; 2. Diabetic Retinopathy; 3. Hypertensive Cardiovascular
Disease; 4. Insulin Dependent Diabetes Mellitus; 5. Mitral Regurgitation; 6. Myocardial
Insufficiency."  *Id.* at 24.  Finally, Dr. Faulkner's "Plan/Recommendations" states "A Cardiac
Catheterization is to be scheduled" and notes that Plaintiff's medications should be increased.
*Id.*  These ailments are also documented on a Medical Record of Prisoner in Transit that Dr.
Prince signed on October 29, 2004, related to Plaintiff's November 1, 2004 transfer from FCI-

Forrest City to FCC Beaumont (Low).  *See id.* at 26-28.[10]

Plaintiff's evidentiary proffer clearly establishes that, as of October 20, 2004, the BOP

was in possession of medical reports–completed by Drs. Faulkner, Kineish, and Prince–reflecting

the vast majority of the ailments as to which Plaintiff alleges his medical records were inaccurate

or incomplete.  As a result, it is far from clear that Plaintiff's medical records were either

inaccurate or incomplete as of that date.  Even more importantly, once the BOP became aware of

the true state of Plaintiff's medical condition on October 20, 2004, it is unclear what benefit

would have been served by obtaining Plaintiff's pre-incarceration medical records.  While the

medical reports possessed by the BOP as of October 20, 2004 may not be as extensive as the

medical records that Plaintiff asserts his personal physicians maintained prior to his

incarceration, *see* Am. and Suppl. Compl. ¶¶ 6-12, they nevertheless reflect the ailments as to

which Plaintiff maintains BOP was unaware.  The BOP's alleged refusal to obtain additional

medical records simply cannot be described as "so 'patently egregious and unlawful' that anyone

---

[10] As evidence of the BOP's alleged intentional or willful violation of the Privacy Act, Plaintiff notes–and his proposed Amended and Supplemental Complaint alleges–that, in the Medical Record of Federal Prisoner in Transit, Dr. Prince indicated that Plaintiff's angina was stable and that he was to receive a cardiac catheterization within six months.  *See* Am. and Suppl. Compl. ¶ 18; Pl.'s Aug. Opp'n at 5-6; Pl.'s Evid. Submiss. at 26-28.  Plaintiff claims that this demonstrates a willful or intentional violation of the Privacy Act because Dr. Faulkner's Report indicated that Plaintiff's angina was unstable and because in his report following Plaintiff's return from seeing Dr. Faulkner, Dr. Kineish noted that Plaintiff would be scheduled for a cardiac catheterization "ASAP."  *Id.*; Pl.'s Evid. Submiss. at 24-25.  However, an October 21, 2004 note on Plaintiff's Chronological Record of Medical Care, which appears to be written by Dr. Prince, documents a conversation with Dr. Faulkner "who has had a chance to review inmate's medial history.  He feels cardiac cath. is an elective procedure.  He states that review of this inmate's [illegible] reveals that he may be at end stage cardiac disease at which no surgical intervention can occur only [illegible] medication of the condition."  Pl.'s Evid. Submiss. at 25.  It therefore appears that the Medical Record of Federal Prisoner in Transit accurately reflects Dr. Prince's understanding of Plaintiff's medical condition as of the date she signed the form, October 29, 2004.

undertaking the conduct should have known it 'unlawful.'" *Laningham*, 813 F.2d at 1242.

Plaintiff's Amended and Supplemental Complaint boils down to his dissatisfaction with the

medical treatment he received and the decisions that the BOP made regarding his placement and

transfers, but such complaints do not make out a claim that the BOP violated the Privacy Act.

Plaintiff's allegations regarding events after the BOP received Dr. Faulkner's October 20, 2004

Report simply do not demonstrate that the BOP acted "without grounds for believing it[s actions]

to be lawful, or [] flagrantly disregard[ed Plaintiff's] rights under the [Privacy] Act." *Albright*,

732 F.2d at 189.

The remaining time in question, then, is the period between July 26, 2004 and October

20, 2004.  Plaintiff asserts, and the record evidence demonstrates, that on July 26, 2004, Plaintiff

sent an "Inmate Request to Staff Form" to Dr. Prince, in which he extensively documented his

medical history.  Pl.'s Aug. Opp'n at 3, Pl.'s Evid. Submiss. at 9-10 (7/26/04 Inmate Req. to

Staff).  Dr. Prince responded to Plaintiff's Inmate Request on August 2, 2004, noting "I have not

been made aware of your angina.  The last diagnosis made of your chest pain here was

[gastrointestinal reflux disease] and didn't have the appearance of angina.  If your condition

worsens or changes please return to sick call or be seen by emergency." *Id.* at 9.[11]  According to

---

[11] Plaintiff points to this response as evidence of the BOP's alleged willful or intentional violation of the Privacy Act because, in her October 7, 2004 Declaration submitted to the United States District Court for the Eastern District of Arkansas, Dr. Prince stated that on August 3, 2004, Plaintiff "was seen in chronic care clinic by me, he had no complaints of chest pain or other problems.  I informed him that he was anemic and that he would get a hemocult to check for rectal bleeding." Pl.'s Evid. Submiss. at 7.  Dr. Prince's October 7, 2004 Declaration and her August 2, 2004 response to Plaintiff's Inmate Request are not necessarily inconsistent because it is possible that Plaintiff did not actually report chest pain when seen by Dr. Prince on August 3, 2004.  As a result, the Court does not determine that Dr. Prince's Declaration demonstrates a willful or intentional violation of the Privacy Act, but simply notes that there appears to be a factual question as to the level of Dr. Prince's awareness of Plaintiff's medical condition as of

Dr. Prince's October 7, 2004 Declaration, Dr. Prince saw Plaintiff again on September 24, 2004, at which point Plaintiff:

> voiced concern that his cardiac condition may be unstable due to increased shortness of breath and difficulty walking.  I informed him he was anemic and his shortness of breath and decreased ability to walk could be related to that. . . I also told him he needed to request a copy of his medical record from his outside Doctor.  Medical history is important and is needed to verify his current cardiac status.

*Id.* at 7 (10/7/04 Prince Decl.).  Dr. Prince further avers that, as of October 7, 2004, "[w]e have no evidence of outside records that show his cardiac condition is unstable or even that it exists." *Id.*

Plaintiff's proposed Amended and Supplemental Complaint relies heavily on Dr. Prince's Declaration to support the BOP's allegedly willful or intentional violation of the Privacy Act. According to Plaintiff, Dr. Prince "tried to shift the responsibility for obtaining accurate medical records to [Plaintiff], and filed a declaration in federal court falsely claiming that she had no evidence that [Plaintiff] had any cardiac condition and that he had not complained of any cardiac problems."  Am. and Suppl. Compl. ¶ 18.  At the very least, Plaintiff has proffered evidence sufficient to demonstrate that Dr. Prince became aware of Plaintiff's claims regarding his medical history during the summer and fall of 2004, and that she placed the burden on him to obtain his pre-incarceration medical records.[12]  However, "the 'intentional or willful' action requirement of Section 552a(g)(4) refers only to the intentional or willful failure of the agency to

---

early August 2004.

[12] The Court questions whether Plaintiff's physicians would have been able to release Plaintiff's medical records directly to the BOP in light of applicable federal privacy laws without at least a signed release form from Plaintiff.

21

abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures." *Albright*, 732 F.2d at 189.  While it could be argued that Plaintiff's evidence might establish that Dr. Prince acted willfully and intentionally with respect to Plaintiff's records, the Court nevertheless concludes that Plaintiff's proposed Amended and Supplemental Complaint fails to allege a violation of the Privacy Act between July 26, 2004 and October 20, 2004 because the BOP has exempted its medical records system from the Privacy Act's amendment provision.

The Privacy Act allows the head of any agency to promulgate regulations to exempt any of the agency's systems of records from certain parts of the Privacy Act, if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).  Pursuant to this authority, the BOP has promulgated regulations to exempt the BOP's Inmate Physical and Mental Health Record System (JUSTICE/BOP-007) from subsection (d) (the amendment provision) of the Privacy Act.  *See id.*; 28 C.F.R §§ 16.97 (a)(6), b(3); Def.'s Mot. to Dismiss at 16.[13]  The gravamen of Plaintiff's proposed Amended and

---

[13] In its original Motion to Dismiss and/or Motion for Summary Judgment or, in the Alternative Motion to Transfer Venue, the BOP argued that this exemption precluded Plaintiff from seeking amendment of his records.  Def.'s Mot. to Dismiss at 16.  The Court noted the BOP's argument in its October 17, 2006 Memorandum Opinion, but found it irrelevant because Plaintiff specifically asserted that he was not seeking amendment of his records, but rather damages pursuant to subsection (g)(4).  *See* Mem. Op. at 18.  Upon further reflection, it is obvious that the BOP's exemption pursuant to subsection (j)(2) is nevertheless relevant, as the Court explains herein.

Supplemental Complaint is that he "informed the BOP that its records were incomplete and inaccurate, but the BOP refused to obtain accurate information from third-party sources such as physicians and hospitals, even though such information was readily available. . . ."  Am. and Suppl. Compl. ¶ 18.  However, because the BOP has effectively exempted its Inmate Physical and Mental Health Record System from the Privacy Act's amendment provision, it was under no obligation to amend Plaintiff's medical records upon his request.  *See White v. United States Probation Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam); *Sellers*, 959 F.2d at 309.

As a result, "[a]ny duty the [BOP] had regarding the accuracy of [Plaintiff's] file flows from subsection e(5)" of the Privacy Act, which suggests the BOP "has no duty to act on an inmate's challenge and verify his record until the agency uses the record in making a determination affecting his rights, benefits, entitlements or opportunities."  *Deters*, 85 F.3d at 660.  Plaintiff thus cannot maintain a Privacy Act claim based solely on the BOP's alleged failure to supplement his medical records upon request, but rather must point to an "adverse determination" that was proximately caused by the BOP's reliance on inaccurate or incomplete records.  *Id.* at 657, 660.  As discussed above, Plaintiff's proffered evidence demonstrates that between July 26, 2004 and October 20, 2004, Dr. Prince became aware of Plaintiff's medical condition and placed the burden on him to obtain his pre-incarceration medical records.  However, Plaintiff's evidence does not demonstrate, nor does Plaintiff allege, that the BOP made an adverse determination with respect to Plaintiff during that time period in reliance on allegedly inaccurate or incomplete medical records.  The adverse determinations alleged in Plaintiff's proposed Amended and Supplemental Complaint are all subsequent to October 20, 2004.  *See* Am. and Suppl. Compl. ¶ 17(a)-(d).  During the relevant time period, Plaintiff alleges only that

he was housed at FCI-Forrest City and details his claim that FCI-Forrest City "has never been a proper place for [him] to serve either of his sentences." *Id.* ¶ 17(d)(1)-(6). Plaintiff does not allege, however, that the BOP made any "determination"–adverse or otherwise–with respect to his placement at FCI-Forrest City between July 26, 2004 and October 20, 2004. The fact that Plaintiff was kept at FCI-Forrest City during that time period does not mean that the BOP actually made a "determination" to do so. Again, Plaintiff's clear dissatisfaction with the medical care that he received at FCI-Forrest City, does not make out a violation of the Privacy Act absent a claim that the BOP's maintenance of allegedly inaccurate or incomplete records proximately caused Plaintiff to suffer an adverse determination.

Finally, the Court notes that Plaintiff may well be entirely precluded from maintaining a suit for damages pursuant to subsection (g)(4) of the Privacy Act. In addition to exempting its Inmate Physical and Mental Health Records System from subsection (d) of the Act, the BOP has promulgated regulations exempting that system of records from subsection e(5) (the maintenance provision) of the Act. *See* 5 U.S.C. § 552a(j)(2); 28 C.F.R. § 16.97 (n), (o). Under the same circumstances, courts in this Circuit have held that plaintiffs are effectively "barred from obtaining any remedy, including damages, under subsection (g), for BOP's alleged failure to maintain records pertaining to [them] with the mandated level of accuracy." *Brown v. BOP*, 498 F. Supp. 2d 298, 302-03 (D.D.C. 2007) (citing cases including *Martinez v. BOP*, 444 F.3d 620, 624 (D.C. Cir. 2006)); *see also Conklin v. BOP*, Civil Action No. 07-0155 (RBW), 2007 WL 2781905, at *4 (D.D.C. Sept. 24, 2007).[14] Although the BOP has not raised this argument in the

---

[14] The Court notes that in *Tijerina v. Walters*, 821 F.2d 789 (D.C. Circuit 1987), the D.C. Circuit concluded that "an agency has no power under the [Privacy] Act to exempt itself from the civil liability provisions of subsection (g)." *Id.* at 795-96. The Court therefore does not

instant case, the Court sees no reason why it would not pertain to Plaintiff's claim.

Plaintiff's proposed Amended and Supplemental Complaint could not survive a motion to dismiss for all of the reasons discussed above. As a result, the Court concludes that Plaintiff's proposed amendment would be futile, and shall therefore deny Plaintiff's Motion for Leave to File Amended and Supplemental Complaint.

   C.   *Plaintiff's Motion to Compel Production of Documents*

On August 3, 2007, Plaintiff filed a Motion to Compel Production of Documents, asserting that the BOP failed to produce certain BOP Program Statements and documents that Plaintiff believed should have been included in his medical file in response to Plaintiff's discovery requests. Pl.'s Mot. to Compel at 1-2. In particular, Plaintiff seeks the production of an e-mail from Dr. Prince, which Plaintiff asserts he saw "on March 23, 2007 when he was looking at his BOP Medical Records files." *Id.* at 2. Plaintiff does not describe the specific contents of the e-mail, but states that it "was located in proximity to an undated and unsigned version of" Dr. Prince's October 7, 2004 Declaration. *Id.* In its Reply, the BOP states that "a records technician discovered that medical staff had inadvertently placed an October 10, 2004 e-mail, between Dr. Prince and a BOP attorney, in Plaintiff's medical file" and that the BOP "considers this document to be covered by the attorney-work product privilege." Def.'s Reply at 4. The BOP therefore attaches a privilege log to its Reply, in which it indicates that the e-mail

--------

determine that Plaintiff may be unable to pursue damages under subsection (g) based on the BOP's purported exemption of the Inmate Physical and Mental Health Records System from that subsection. *See* 28 C.F.R. § 16.97(a)(6), b(9). Rather, the Court concludes, as the D.C. Circuit has, that the BOP's exemption of the system of records from the maintenance requirement of subsection (e)(5) may effectively preclude Plaintiff from pursuing damages based on an alleged failure to comply with that subsection. *See Martinez*, 444 F.3d at 624.

was sent by a BOP attorney to Dr. Prince, and is covered by the attorney-client and attorney work product privileges. *Id.*, Ex. 1 (Priv. Log).[15]

Although the BOP does not identify the subject matter of the e-mail, the Court notes that an e-mail sent by an attorney to his or her client for the purpose of providing legal advice might well fall within the scope of the attorney-client privilege. *See In re Sealed Case*, 737 F.2d 95, 98-99 (D.C. Cir. 1984) (describing the scope of the attorney-client privilege). Determining whether the BOP has waived any privilege it may have once held with respect to the e-mail, however, is quite difficult because the parties' filings are less than crystal clear with regards to the chain of control over the e-mail. The BOP asserts that medical staff inadvertently placed the e-mail in Plaintiff's medical file but does not explain how or why that occurred, or why no one apparently discovered that the e-mail had been placed in Plaintiff's medical file in the two and a half years between when e-mail was sent and when Plaintiff saw it in his medical file. Def.'s Reply at 4. For his part, Plaintiff asserts that he saw the e-mail in his medical file, and although he suggests that he may have reviewed its contents, he does not assert that the e-mail was ever produced to him in any way. Pl.'s Mot. to Compel at 2; Pl.'s Aug. Opp'n at 8-9.

The D.C. Circuit "adheres to a strict rule on waiver of privileges. 'The confidentiality of communications covered by a privilege must be jealously guarded by the holder of the privilege lest it be waived.'" *Sec. & Exch. Comm'n v. Lavin*, 111 F.3d 921, 929 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)). Moreover, because the "courts will grant no greater protection to those who assert the privilege than their own precautions warrant

---

[15] The Court notes that the BOP's Reply refers to an October 10, 2004 e-mail, while its Privilege Log describes an October 21, 2004 e-mail. The Court nevertheless assumes that there is only one e-mail in question.

. . . the [attorney-client] privilege is lost even if the disclosure is inadvertent." *In re: Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007) (quoting *In re Sealed Case*, 877 F.2d at 980)). The fact that "medical staff" may have inadvertently placed the e-mail in Plaintiff's medical records therefore does not preclude a finding of waiver; to the contrary, the law in this Circuit is clear that even an inadvertent disclosure constitutes a waiver of the attorney-client privilege. *In re Sealed Case*, 877 F.3d at 980; *see also Gen. Elec. Co. v. Johnson*, Civil Action No. 00-2855 (JDB), 2007 WL 433095, at * 3 (D.D.C. Feb. 5, 2007) (citing *Hicks v. Bush*, 452 F. Supp.2d 88, 104 (D.D.C. 2006)). Although the BOP does not clarify whether the "medical staff" that placed the e-mail in Plaintiff's medical records file was Dr. Prince or another member of BOP's staff, it appears "that someone within [the BOP] and thereby [the BOP] itself (since it can only act through its employees) was careless with the confidentiality of its privileged communications." *In re Sealed Case*, 977 F.2d at 980.[16] The party seeking to invoke the attorney-client privilege–here the BOP–bears the burden of presenting to the court sufficient facts to establish the privilege. *In re Sealed Case*, 737 F.2d at 99. As the BOP has failed to do so, the Court concludes that any privilege BOP may have had was waived when Plaintiff viewed the e-mail in question. The Court shall therefore grant-in-part Plaintiff's Motion to Compel, insofar as it seeks

---

[16] The Court assumes that BOP's reference to "medical staff" describes BOP medical staff; however, even if the medical staff in question was a third party to the attorney-client relationship between BOP and its attorney, the Court notes that an involuntary disclosure by a third-party may waive the attorney-client privilege when the holder of the privilege has failed to take adequate precautions to maintain a document's confidentiality and to take reasonable steps to reclaim the protected material. *See Lavin*, 111 F.3d at 930; *Gen. Elec.*, 2007 WL 433095, at *3. Here, the BOP bears the burden of presenting the Court with facts sufficient to establish the attorney-client privilege. *See In re Sealed Case*, 737 F.2d at 99. Based on the minimal record that the BOP has presented to the Court, the Court cannot conclude that BOP took adequate precautions to maintain the confidentiality of the e-mail in question or took reasonable steps to reclaim the e-mail upon discovering that it had been placed in Plaintiff's medical records file.

the production of the e-mail in question.[17]

The e-mail in question, however, does not alter the Court's conclusion as to the futility of

Plaintiff's proposed amendment.  Plaintiff's Augmented Opposition suggests that he reviewed

the e-mail when he saw it in his medical file in March 2007 and that the e-mail relates to the

drafting of Dr. Prince's October 7, 2004 Declaration.  *See* Pl.'s Aug. Opp'n at 9.  Plaintiff does

not indicate how or if the e-mail is materially different from Dr. Prince's final Declaration, which

is included in the record.  *Id.*  Nevertheless, for reasons discussed in detail above, an e-mail

regarding the drafting of Dr. Prince's Declaration may be probative of the level of Dr. Prince's

knowledge of Plaintiff's medical history at the time she signed her Declaration, but does not

make out a violation of the Privacy Act.  Dr. Prince signed her Declaration on October 7, 2004

and the record is clear that by October 20, 2004, the BOP possessed medical reports reflecting

the vast majority of the ailments as to which Plaintiff alleges his medical records were inaccurate

or incomplete.  As discussed above, because the BOP was under no obligation to amend

Plaintiff's medical records upon request, Plaintiff cannot establish a Privacy Act violation

without pointing to an adverse determination that was proximately caused by the BOP's reliance

on inaccurate or incomplete records.  *Deters*, 85 F.3d at 657, 660.  Plaintiff's proposed Amended

---

[17] Plaintiff's Motion to Compel also suggests that the BOP may not have produced certain documents that Plaintiff believes should have been included in his medical file.  Pl.'s Mot. to Compel at 1-2.  However, the BOP's Response to Plaintiff's First Request for Production of Documents indicates that the BOP produced a copy of Plaintiff's BOP medical record to Plaintiff, *see* Pl.'s Evid. Submiss. at 11, and in its August 10, 2007 Reply, the BOP asserts that it "does not possess any discovery requests to which it did not respond."  Def.'s Reply at 4.  Plaintiff did not file a Reply in support of his Motion to Compel, and has not presented the Court with evidence of documents that should have been, but were not, produced to him.  The Court therefore assumes that the BOP has produced all documents other than the e-mail discussed above that are called for in Plaintiff's requests for production, and shall deny-in-part Plaintiff's Motion to Compel to the extent that it seeks documents other than the e-mail.

and Supplemental Complaint simply fails to suggest that any determination–adverse or otherwise–was made during the period in time when the BOP's records were allegedly inaccurate or incomplete, and Plaintiff does not suggest that the e-mail he seeks to discover from the BOP has any bearing on that issue. As such, although the Court shall grant-in-part Plaintiff's Motion to Compel and require the BOP to produce the e-mail in question, the Court nevertheless concludes that Plaintiff's proposed amendment would be futile.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall grant-in-part and deny-in-part Plaintiff's Motion to Compel. In addition, the Court shall grant Defendant's Motion for Summary Judgment with respect to Plaintiff's original Privacy Act claim, shall deny Plaintiff's Motion for Leave to File Amended and Supplemental Complaint because Plaintiff's proposed amendments would be futile, and shall furthermore dismiss this action in its entirety.

Date:   November 13, 2007

Copy to:
Alfred Elliott
Reg. No. 97965-024
FCC Forrest City (Low)
P.O. Box 9000
Forrest City, AR 72336

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge