UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALFRED ELLIOTT,

    Plaintiff,

    v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

Civil Action No. 04-1702 (CKK)

**MEMORANDUM OPINION**
(April 21, 2008)

Currently pending before the Court is Plaintiff's Motion for Reconsideration of this Court's November 13, 2007 Memorandum Opinion and Order, which granted Defendant, Federal Bureau of Prisons' ("BOP"), Motion for Summary Judgment with respect to Plaintiff's claim that the BOP violated the Privacy Act, 5 U.S.C. § 552a, and also denied Plaintiff's Motion for Leave to File an Amended and Supplemental Complaint on the grounds that Plaintiff's proposed amendment would be futile. For reasons set forth below, the Court treats Plaintiff's Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 60(b), and concludes that Plaintiff's motion does not present the type of "extraordinary circumstances" meriting relief under that Rule. Rather, Plaintiff's Motion for Reconsideration represents an attempt to rehash arguments that Plaintiff has either previously made, or has had ample opportunity to make, during the numerous rounds of briefing on Plaintiff's Privacy Act claim. The Court shall therefore DENY Plaintiff's [91] Motion for Reconsideration.

**I. BACKGROUND**

The Court assumes familiarity with, and incorporates herein, its October 17, 2006,

December 27, 2006, and November 13, 2007 Memorandum Opinions, which set forth in detail

the factual background of this case. *See generally Elliott v. BOP*, Civ. A. No. 04-1702 (CKK),

2006 WL 53217760 (D.D.C. Oct. 17, 2006) ("*Oct. 17 Op.*"); *Elliott v. BOP*, Civ. A. No. 04-1702

(CKK), 2006 WL 3826930 (D.D.C. Dec. 27, 2006) ("*Dec. 27 Op.*"); and *Elliott v. BOP*, 521 F.

Supp. 2d 41 (D.D.C. 2007 ) ("*Nov. 13 Op.*").  As such, the Court only briefly addresses those

facts necessary to resolve Plaintiff's Motion for Reconsideration and cites, as appropriate, to the

portions of the Court's previous Memorandum Opinions that address Plaintiff's recycled

arguments.  Plaintiff Alfred Elliott[1] is a federal prisoner currently serving a 36-month sentence

imposed on May 22, 2007.[2]  *Nov. 13 Op.*, 521 F. Supp. 2d at 43-44 & n.2.  Plaintiff alleges that

he has suffered and continues to suffer from a number of ailments and diseases, and that he has

undergone a number of medical procedures between 2001 and 2004.  *Id.* at 44.[3]  On October 4,

---

[1] As the Court has previously noted, although Plaintiff is proceeding in this action *pro se*, "Plaintiff received his law degree from the University of Chicago in 1969 and was certified as a trial lawyer by the U.S. District Court for the Northern District of Illinois." *Oct. 17 Op.*, 2006 WL 53217760, at *1 n.2.

[2] As explained in the Court's November 13, 2007 Memorandum Opinion, when Plaintiff initially filed this action he was serving a five-year federal sentence for Wire Fraud, Securities Fraud, Racketeering, and Filing False Income Tax Return. *Nov. 13 Op.* at 43-44 n.2.  That sentence was completed on September 10, 2006, and Plaintiff is now serving a 36-month sentence imposed on May 22, 2007 for having failed to appear to serve his first sentence, as he was ordered by the Court to do in 1989. *Id.*

[3] Plaintiff's alleged ailments include a heart attack, diabetic atherosclerosis, angina, post-heart surgery infection, 24 hour-a-day pain, pleural effusions, hypertension, fatigue, dizziness and frequent urination due to medication, poliuria, obstructive sleep apnea, gastroesophageal reflux disease, diabetes mellitus, herniated disc, chest and back pain, prostatic hyperplasia, benign prostatic hyperplasia, morbid obesity, and an encased left lung.  First Am. Compl. ¶¶ 5(a)-(w). Plaintiff also asserts that he underwent a number of medical procedures between 2001 and 2004, including coronary bypass surgery, four angioplasty procedures, and surgical reconstruction of his chest.  *Id.* ¶¶ 5(a), (d).

2004, Plaintiff filed a one-count Complaint with this Court, alleging that the BOP violated the Privacy Act by using a pre-sentence report prepared in 1989 (when Plaintiff was 45 years old and in better health) in determining that Plaintiff should serve a period of incarceration at the Federal Correctional Institution in Forrest City, Arkansas ("FCI-Forrest City"). *Id.* Plaintiff subsequently filed his First Amended Complaint, in which he maintained his Privacy Act claim as Count I, and added two additional claims under the Americans with Disabilities Act ("ADA") (Count II) and the Rehabilitation Act ("RA") (Count III). *Id.*

The Court's October 17, 2006 Memorandum Opinion granted Defendant's Motion for Summary Judgment as to Plaintiff's Privacy Act claim and dismissed Plaintiff's ADA and RA claims. The Court's grant of summary judgment was based on a finding that Plaintiff had "presented no evidence that the BOP's determination to designate him for service at FCI-Forrest City constituted an intentional or willful violation of the Privacy Act," and that Plaintiff therefore could not prevail on his claim for monetary damages under Section (g)(4) of the Privacy Act as a matter of law. *See Oct. 17 Op.*, 2006 WL 53217760 *9-12. Plaintiff subsequently filed a Motion for Relief from Summary Judgment under Federal Rule of Civil Procedure 60(b), arguing that he was entitled to take discovery relating to his Privacy Act claim before the Court granted Defendant's Motion for Summary Judgment. Although Plaintiff had not filed an affidavit pursuant to Federal Rule of Civil Procedure 56(f), the Court nevertheless granted Plaintiff's motion, allowing the parties the opportunity to "complete discovery as to the very discrete issue of whether Defendant willfully or intentionally violated the Privacy Act," and giving Plaintiff the chance to file an augmented opposition to Defendant's Motion for Summary Judgment setting forth facts relevant to that issue. *Dec. 27 Op.*,2006 WL 3826930, at * 5.

The Court's November 13, 2007 Memorandum Opinion addressed that augmented opposition, in which Plaintiff generally conceded that the information he obtained during discovery indicated that he could not demonstrate a Privacy Act violation as originally alleged, *i.e.*, based on his initial designation to FCI-Forrest City in June 2004. *Nov. 13 Op.* at 44-45. Rather than simply accept that concession, however, the Court continued to review the record evidence and conclude that summary judgment on Plaintiff's original Privacy Act claim remained appropriate because Plaintiff proffered no evidence that the BOP was aware of any inaccuracy in his medical records at the time of his initial designation. *Id.* at 46-48. As the Court had previously dismissed the other claims included in Plaintiff's First Amended Complaint, the Court's grant of summary judgment on Plaintiff's Privacy Act claim would ordinarily have necessitated dismissal of this action. However, Plaintiff attempted to avoid that result by filing a motion for leave to file an amended and supplemental complaint including a revised Privacy Act claim and two new claims–one pursuant to the Administrative Procedure Act ("APA"), the other pursuant to the Religious Freedom Restoration Act ("RFRA"). *Id.* at 48. The Court therefore considered, and denied, Plaintiff's motion for leave to file, concluding that Plaintiff's proposed amendments would be futile.

## II.  LEGAL STANDARD

Plaintiff purported to file his Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 59(e) by sending the Court a single-page, handwritten document, executed on November 27, 2007. *See* Docket No. [91]. That document appears intended to function as a placeholder; its sole substantive paragraph states that Plaintiff "moves for reconsideration of the Court's judgment and order of November 13, 2007, on the grounds of newly discovered

4

evidence, legal errors and factual errors.  A separate supporting memorandum will be submitted once Plaintiff has access to a typewriter and copying machine." *Id.*  However, in the absence of any support, factual or legal, for Plaintiff's claims of newly discovered evidence, legal error, and factual error, Defendant could not respond to Plaintiff's motion and the Court could not address it.  Consideration of Plaintiff's motion for reconsideration was thus necessarily delayed until after Plaintiff filed his Memorandum in Support of his purported Rule 59(e) motion, which was executed on December 20, 2007 and received by the Court on January 11, 2008.  *See* Pl.'s Mot., Docket No. [92].

Plaintiff's supporting memorandum asserts that Plaintiff's "motion was deemed filed on November 27" pursuant to the "prisoner mailbox rule," and should therefore be treated pursuant to Rule 59(e) because it was filed within 10 days of the Court's November 13, 2007 Memorandum Opinion and accompanying Order (excluding weekends and holidays, as set forth in Federal Rule of Civil Procedure 6(a)).  *Id.* at 1-2 (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998) for the proposition that the prisoner mailbox rule applies to Rule 59(e) filings).  Plaintiff is correct that his single-page document was deemed filed on November 27, 2007, i.e., within 10 days of the Court's November 13, 2007 Memorandum Opinion and Order, as counted under Rule 6(a).  The problem for Plaintiff, however, is that his single-page placeholder document does not "state with particularity the grounds for" reconsideration because it provides absolutely no support for his claims of newly discovered evidence, legal error, or factual error.  *See* Docket No. [91].  As such, Plaintiff's placeholder document does not meet the requirements for motions contained in Federal Rule of Civil Procedure 7(b).

Rather, the grounds for Plaintiff's motion for reconsideration are stated with particularity

in his supporting memorandum, which is deemed filed as of December 20, 2007, i.e., well

outside the ten-day period provided for in Rule 59(e).  *See* Fed. R. Civ. P. 59(e) ("A motion to

alter or amend judgment must be filed no later than 10 days after the entry of judgment.").  While

Plaintiff essentially asks that the Court extend, *nunc pro tunc*, his time to file under Rule 59(e),

D.C. Circuit law is clear that "the District Court simply has no power to extend that time

limitation."  *Ctr. for Nuclear Responsibility, Inc. v. United States Nuclear Regul. Comm'n*, 781

F.2d 935, 941 (D.C. Cir. 1986); *see also* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the

time to act under Rule[ 59(e)]. . . .").  Because the Court cannot consider Plaintiff's single-page

placeholder document a properly filed motion under Rule 7(b), and cannot extend Plaintiff's time

to file a Rule 59(e) motion beyond the ten days provided for in that Rule, the Court must treat

Plaintiff's motion as filed when perfected by his supporting memorandum on December 20,

2007.[4]  As that date falls well outside the ten-day period provided for in Rule 59(e), the Court

shall considers Plaintiff's motion for reconsideration pursuant to Federal Rule of Civil Procedure

60(b).  *See United States v. Pollard*, 290 F. Supp. 2d 153, 156 (D.D.C. 2003) (generally, a

motion for reconsideration is treated as a "[Fed. R. Civ. P.] 59(e) motion if filed within 10 days

of entry of the challenged order and as a Rule 60(b) motion if filed thereafter.") (quoting *United

States v. Clark*, 984 F.2d 31, 32 (2d Cir. 1993)).

    Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its

legal representative from a final judgment, order, or proceeding for . . . (2) newly discovered

---

[4] By a Minute Order dated January 17, 2008, the Court granted Plaintiff's motion to file his memorandum in support of his purported Rule 59(e) motion by December 20, 2007.  *See Elliott v. BOP*, Civ. A. No. 04-1702, Minute Order (D.D.C. Jan. 17, 2008).  That minute order was silent as to–and thus has no bearing upon–whether Plaintiff's motion for reconsideration would be treated under Rule 59(e) or Rule 60(b).

evidence that, with reasonable diligence, could not have been [previously] discovered . . . or (6)

any other reason justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(b).

The Rule

> was intended to preserve "the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of all the facts." *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927 [](1970) (emphasis in original); *accord*, *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979); *Boughner v. Secretary of HEW*, 572 F.2d 976, 977 (3d Cir. 1978); *Clarke v. Burkle*, 570 F.2d 824, 830 (8th Cir. 1978).  But as the Supreme Court has said, "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 [] (1950).  Rule 60(b) cannot, therefore, be employed simply to rescue a litigant from strategic choices that later turn out to be improvident. *See Marshall v. Board of Educ.*, 575 F.2d 417, 424 (3d Cir. 1978); *Federal's, Inc. v. Edmonton Investment Co.*, 555 F.2d 577, 583 (6th Cir. 1977); *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 651-52 (1st Cir. 1972).

*Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).  Rule 60(b)

"gives the district judge broad latitude to relieve a party from a judgment," *Richardson v. Nat'l*

*R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995), but "should be only sparingly used,"

*Good Luck Nursing Home*, 636 F.2d at 577, and relief under Rule 60(b)(6) is granted in only

"extraordinary circumstances," *Ackerman*, 340 U.S. at 199.  Such extraordinary circumstances

may be present "[w]hen a party presents a previously undisclosed fact so central to the litigation

that it shows the initial judgment to have been manifestly unjust    . . . even though the original

failure to present the information was inexcusable."  *Good Luck Nursing Home*, 636 F.2d at 577.

However, a party that "has not presented known facts helpful to its cause when it had the chance

cannot ordinarily avail itself on rule 60(b) after an adverse judgment has been handed down."  *Id.*

## III.  DISCUSSION

Plaintiff's motion for reconsideration contains two arguments regarding the Court's grant

of summary judgment as to his original Privacy Act claim and an additional two arguments

regarding the Court's denial of leave to file Plaintiff's proposed amended and supplemental

complaint.  After Defendant filed its Opposition to Plaintiff's motion for reconsideration,

Plaintiff filed a "Supplement" to his motion for reconsideration addressing so-called newly

discovered evidence relevant to his proposed amended Privacy Act claim, *see* Pl.'s Suppl. to

Rule 59(e) Mot., Docket No. [100] (hereinafter "Pl.'s Suppl.") and Defendant responded to

Plaintiff's Supplement.[5]  The Court considers Plaintiff's arguments for reconsideration regarding

his original Privacy Act claim before turning to his arguments regarding his motion to amend.

### A.      *Plaintiff's Original Privacy Act Claim*

Plaintiff devotes the first two pages of his motion for reconsideration to the Court's

passing statement in its November 13, 2007 Memorandum Opinion that "Plaintiff may well be

entirely precluded from maintaining a suit for damages pursuant to subsection (g)(4) of the

Privacy Act" because the BOP has promulgated regulations exempting the system of records at

issue–the Inmate Physical and Mental Health Records System–from certain subsections of the

Privacy Act.  *See Nov. 13 Op.*, 521 F. Supp. 2d at 56 & n.14.  However, as Defendant correctly

points out, the Court explicitly stated that it did "not determine that Plaintiff may be unable to

---

[5] The newly discovered evidence addressed in Plaintiff's Supplement consists of an October 21, 2004 e-mail chain between Dr. Edna Prince, the Clinical Director at FCI-Forrest City, and a Lisa James Young (whom Plaintiff speculates may have been a BOP staff attorney). *See* Pl.'s Suppl. at 1, Ex. 1.  That e-mail was the subject of Plaintiff's February 4, 2008 Motion to Compel, *see* Docket No. [98], but was provided to Plaintiff on February 7, 2008, *see* Def.'s Resp. to Pl.'s Mot. to Compel., Docket No. [99].  The Court shall therefore dismiss Plaintiff's [98] Motion to Compel as moot in the Order accompanying this Memorandum Opinion.

pursue damages under subsection (g)." *Id.* at n.14.  As such, it is unnecessary to address

Plaintiff's argument that he is not precluded from maintaining a damage suit under subsection

(g)(4) of the Privacy Act.

Plaintiff next raises various arguments that the BOP willfully or intentionally violated the

Privacy Act by failing to follow BOP policy requiring initial designations of inmates with acute

medical problems or chronic care requirements to be performed by Medial Designators rather

than Regional Designators.  Pl.'s Mot. at 4.  According to Plaintiff, the BOP must have been

aware of his chronic care requirements as of June 2004 because his designation form lists him as

a health care level 3 inmate,[6] and therefore violated its own policy when it used a Regional

Designator for Plaintiff's initial designation.  *Id.*  All of Plaintiff's arguments regarding his initial

designation, however, are inappropriate because, as the Court's November 13, 2007

Memorandum Opinion noted, Plaintiff previously conceded that his initial designation did not

constitute a Privacy Act violation.  *Nov. 13 Op.*, 521 F. Supp. 2d at 47.  Indeed, in his Reply in

---

[6] Plaintiff's argument in this respect is that Plaintiff's classification as a care level 3 inmate at the time of his initial designation is inconsistent with the fact that the form only reflects a history of Type 2 diabetes and states that Plaintiff "takes no meds."  *See* Pl.'s Mot. at 6-7; *Nov. 13 Op.*, 521 F. Supp. 2d at 47-48 & n.6.  When Plaintiff previously raised this argument in connection with his motion for leave to file his amended complaint, the Court noted that Plaintiff's classification as a level 3 inmate was not inherently inconsistent with Plaintiff's claim that the BOP was aware of his type 2 diabetes at the time of his initial designation.  *See id.* at n.6. Plaintiff now attempts to rebut that observation by noting that a recent Inmate Profile indicated that, as of March 29, 2007, Plaintiff was designated as a care level 2 inmate despite his numerous cardiac problems.  Pl.'s Mot. at 6-7 & n.4.  Plaintiff's argument, however, amounts to pure speculation.  Simply put, Plaintiff offers no documentary or other support whatsoever for his claim that his current care level classification has any bearing on the BOP's knowledge of his medical conditions at the time of his initial designation.  Even more significantly, Plaintiff fails to explain how his initial designation–the alleged adverse determination to which he points–resulted from a willful or intentional violation of the Privacy Act, as opposed to an alleged violation of BOP policy.

support of his motion to for leave to amend his Complaint, Plaintiff stated that the "evidence obtained so far shows that the willful or intentional violation of the Privacy Act . . . took place *after* his arrival at FCC Forrest City," *id.* (emphasis added), and that he wished to amend his complaint to conform it to that evidence, Pl.'s Reply at 3.  Having apparently abandoned his argument that his initial designation constituted a willful or intentional violation of the Privacy Act, Plaintiff cannot revive that claim through a motion for reconsideration under Rule 60(b).

Moreover, even if his claim is considered, Plaintiff's arguments regarding his initial designation lack merit.  While Plaintiff argues that the Court's November 13, 2007 Memorandum Opinion referred to the wrong Program Statement in considering whether the BOP's alleged policy violations supported Plaintiff's original Privacy Act claim, *see* Pl.'s Mot. at 4, the discussion to which Plaintiff points appropriately involved Program Statement 5100.08, because Plaintiff purported to ground his Privacy Act claim on that Program Statement in the first round of briefing on Defendant's Motion for Summary Judgment.  *See Nov. 13 Op.* at 47-48; *Oct. 17 Op.*, 2006 WL 5217760, at *11.  Insofar as Plaintiff posits a separate argument regarding his designation by a Regional Designator, that argument suffers from the same infirmity that has plagued many of Plaintiff's Privacy Act arguments in this litigation: it does not relate to an alleged failure to comply with the Privacy Act.  To wit, if one accepts Plaintiff's assertion that the BOP was aware of his chronic care requirements at the time of his initial designation, then his complaint is about the BOP's alleged policy violation, and not about any failure to maintain records in the manner required by the Privacy Act.  *See Nov. 13 Op.*, 521 F. Supp. 2d at 43-44, 46.  Plaintiff's motion for reconsideration therefore offers no grounds for revisiting the Court's prior conclusions with respect to Plaintiff's original Privacy Act claim, and certainly does not

present the type of "extraordinary circumstances" required for relief under Rule 60(b).

B.      *Plaintiff's Motion for Leave to File*

The Court's November 13, 2007 Memorandum Opinion also denied Plaintiff leave to file his proposed amended and supplemental complaint, finding that Plaintiff's proposed amendments would be futile. *Nov. 13 Op.*, 521 F. Supp. 2d at 48-57. That conclusion involved two findings: first, that Plaintiff had failed to exhaust his administrative remedies with respect to the claims he proposed to add to his complaint;[7] and second, that Plaintiff's proposed amendments to his Privacy Act claim were not supported by the record evidence before the Court.

As to Plaintiff's failure to exhaust, the Court noted that Plaintiff did not dispute that, under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* at 49 (quoting 42 U.S.C. § 1997e(a)). Nor did Plaintiff dispute that, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Id.* (quoting *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Instead, Plaintiff "assert[ed] that the BOP's exhaustion argument [was] premature because Plaintiff ha[d] not yet filed his Amended and Supplemental Complaint," and simply

---

[7] The November 13, 2007 Memorandum Opinion's discussion of exhaustion of administrative remedies focused on Plaintiff's proposed claim under the RFRA and the First Amendment to the United States Constitution. *See Nov. 13 Op.*, 521 F. Supp. 2d at 48-51. However, the Court also noted that Plaintiff had not exhausted his administrative remedies with respect to the allegations he sought to add to his Privacy Act claim regarding medical treatment he received from the BOP and the accuracy of his medical records. *Id.* at 50-51.

11

attached a draft to his motion for leave to file "to assist the Court." *Id.* at 50 (citing Pl.'s Reply at 1-2).[8] Plaintiff further suggested that the Court grant him leave to eventually amend his complaint, with the promise that he would comply with the PLRA's exhaustion requirement before actually filing his amended complaint. The Court rejected Plaintiff's argument out of hand, as it blatantly ignored the purpose "of the exhaustion requirement [] that by pursuing his administrative remedies, Plaintiff [might] resolve his [claims] without resort to judicial proceedings." *Id.*

In his motion for reconsideration, Plaintiff now argues that he did not fail to exhaust the administrative remedies available to him, offering a description of efforts he allegedly made towards exhaustion of his RFRA claim during 2006. *See* Def.'s Mot. at 7-8; Pl.'s Decl. re: Exhaustion, Docket No. [93]. Significantly, Plaintiff does not even attempt to argue that he exhausted his administrative remedies with respect to his claims regarding the medical treatment he received from the BOP or the accuracy of his medical records, notwithstanding the Court's conclusion in its November 13, 2007 Memorandum Opinion that he had failed to do so. *See Nov. 13 Op.*, 521 F. Supp. 2d at 50-51. Further, as to Plaintiff's current claims that he attempted to exhaust his administrative remedies regarding his RFRA claims, his arguments are simply too late, and frankly lack credibility. The BOP explicitly raised Plaintiff's failure to exhaust in opposing his motion for leave to file an amended complaint. *See id.* at 49-41. Nevertheless,

---

[8] In his motion for reconsideration, Plaintiff asserts that the Federal Rules of Civil Procedure require parties to seek leave of court to amend and supplement their complaints, but do "not require that the new complaint be attached or otherwise submitted to the Court at the time of the motion." Pl.'s Mot. at 9. Plaintiff may be correct with respect to the literal language of Federal Rule of Civil Procedure 15; however, Local Civil Rule 15.1 explicitly requires that a "motion for leave to file an amended pleading [] be accompanied by an original of the proposed pleading as amended." LCvR 15.1.

Plaintiff's Reply in support of that motion did not claim that he had attempted to exhaust his administrative remedies. *Id.* at 49-51. Rather, Plaintiff offered the ungrounded suggestion that the Court grant him leave to file an amended complaint at some point in the future after he had exhausted his administrative remedies, implicitly conceding that he had not yet done so. *Id.*

If, as Plaintiff now asserts, he attempted to exhaust his administrative remedies regarding his RFRA claim during 2006 but was prevented from doing so, that information was certainly available to him when he filed his Reply in support of his motion for leave to amend in October 2007. Indeed, Plaintiff made a similar assertion in opposing the BOP's initial motion to dismiss his Privacy Act claim. *Id.* at 50-51; *Oct. 17 Op.*, 2006 WL 5217760, at * 8. As Plaintiff was entitled to the benefit of all favorable inferences at the motion to dismiss stage, the Court assumed that Plaintiff had exhausted the administrative remedies "available" to him. *Id.*; *Nov. 13 Op.*, 521 F. Supp. 2d at 50-51. When Plaintiff did not even attempt to argue as much–let alone provide evidence in that respect–in response to the BOP's explicit challenge to his motion for leave to amend, the Court was left with no option but to conclude that Plaintiff had not attempted to exhaust his administrative remedies. *Id.* at 49-51. Coming on the heels of Plaintiff's implicit admission that he had not exhausted his administrative remedies, Plaintiff's current claims of efforts towards exhaustion are suspect. In any event, they are far too late. A party that "has not presented known facts helpful to its cause when it had the chance cannot ordinarily avail itself on rule 60(b) after an adverse judgment has been handed down." *Good Luck Nursing Home*, 636 F.2d at 577. As such, the Court will not consider Plaintiff's arguments that he attempted to exhaust his administrative remedies.

In addition to concluding that Plaintiff's proposed amended complaint would not survive

13

a motion to dismiss because Plaintiff failed to exhaust his administrative remedies, the Court's

November 13, 2007 Memorandum Opinion concluded on the merits that Plaintiff's proposed

amendments to his Privacy Act claim were belied by the record evidence he proffered in

opposition to the BOP's motion for summary judgment on his original Privacy Act claim. *Nov.

13 Op.*, 521 F. Supp. 2d at 51-57.  Plaintiff now argues that the Court inappropriately applied a

"fact pleading" standard to the Privacy Act claims in his proposed amended complaint.  Pl.'s

Mot. at 9-11.  Plaintiff's argument is untenable.

As the Court's November 13, 2007 Memorandum Opinion explained, the Court's grant of

summary judgment on Plaintiff's original Privacy Act claim would ordinarily have led to

dismissal of this action because the Court had previously dismissed the other claims included in

Plaintiff's First Amended Complaint. *Nov. 13 Op.*, 521 F. Supp. 2d at 48.  Plaintiff's motion for

leave to file an amended and supplemental complaint thus represented an attempt to avoid the

dismissal of this action, which was rendered inevitable by Plaintiff's own concession that his

initial designation to FCI-Forrest City did not constitute a willful and intentional violation of the

Privacy Act (as well as by the record evidence produced during discovery). *Id.* (citing Pl.'s

Reply at 3).  Furthermore, Plaintiff's purported motivation in moving for leave to amend his

complaint was to conform his pleadings to the evidence. *Id.* at 51-52 (citing Pl.'s Reply at 3).

However, as the Court's November 13, 2007 Memorandum Opinion explains, that very evidence

demonstrated the futility of allowing Plaintiff to amend his complaint. *Id.* at 48-57.

Plaintiff now argues that the Court should have ignored that evidence, despite the fact

that Plaintiff purportedly sought to amend his complaint to conform it to that very evidence.

Essentially, Plaintiff argues that the Court should have accepted the bare allegations contained in

his proposed amended complaint notwithstanding the fact that those allegations were obviously

unsupported by the record evidence on which they were purportedly based.  The Court properly

refused to do so in its November 13, 2007 Memorandum Opinion, *id.* at 51-52, and will not

revisit that conclusion herein.

Nor will the Court revisit the various arguments Plaintiff raises about minor points of the

Court's November 13, 2007 Opinion.  *See* Pl.'s Mot. at 12-14.[9]  That opinion thoroughly

considered the sufficiency of Plaintiff's proposed amended complaint in light of the evidence to

which Plaintiff purported to conform his pleading, *see Nov. 13 Op. at 48-57*, and Plaintiff's

motion for reconsideration does not demonstrate the type of "extraordinary circumstances"

required to grant relief under Rule 60(b)(6).  *Ackerman*, 340 U.S. at 199.

Finally, the Court briefly addresses Plaintiff's arguments regarding the Court's conclusion

that Plaintiff could not make out a Privacy Act claim based on allegations that Dr. Prince falsely

indicated that Plaintiff's angina was stable and that he was to receive a cardiac catheterization

within six months when she signed a Medical Record of Federal Prisoner in Transit on October

29, 2004 in preparation for Plaintiff's transport to FCC Beaumont (Low) on November 1, 2004.

*See* Pl.'s Mot. at 11.  As Plaintiff correctly notes, the Court's November 13, 2007 Memorandum

Opinion concluded that, based on the record evidence, the Medical Record of Federal Prisoner in

Transit "accurately reflects Dr. Prince's understanding of Plaintiff's medical condition as of the

---

[9] Moreover, many of Plaintiff's arguments misrepresent the Court's findings and analysis. For example, Plaintiff argues that the Court mistakenly suggested that "by October 20, 2004 . . . the BOP knew all about Mr. Elliott's medical problems and that his outside records would have contributed little, if any, additional information."  Pl.'s Mot. at 12-13.  Plaintiff's argument overlooks the Court's explicit recognition that "the medical reports possessed by the BOP as of October 20, 2004 may not be as extensive as the medical records that Plaintiff asserts his personal physicians maintained prior to his incarceration."  *Nov. 13 Op.* at 53.

date she signed the form, October 29, 2004." *Nov. 13 Op.*, 521 F. Supp. 2d at 53 n.10.  This

conclusion is also the subject of Plaintiff's Supplement, which argues that the October 21, 2004

e-mail from Dr. Prince to Lisa James Young demonstrates that Dr. Prince "created false medical

records for Mr. Elliott regarding the nature of his angina and his need for an angiogram" by

signing the Medical Record of Federal Prisoner in Transit on October 29, 2004.  *See generally*

Pl.'s Suppl.  While Plaintiff describes this e-mail as a "smoking gun," it is nothing of the sort,

particularly when viewed in the context of Dr. Prince's October 28, 2004 notes provided by the

BOP in response to Plaintiff's Supplement.

 The record evidence before the Court is this:

- On October 20, 2004, Plaintiff was seen by cardiologist Dr. Lee Edwin Faulkner.
Dr. Faulkner's written report of the visit (submitted to the BOP) describes
Plaintiff's angina as unstable, states that "A Cardiac Catheterization is to be
scheduled," and notes that Plaintiff's medications are to be increased.  *Id.* at 53.

- On October 21, 2004, Dr. Prince spoke with Dr. Faulkner.  Dr. Prince recounted
that conversation to Ms. Young in her e-mail of the same date, writing that Dr.
Faulkner "stated that cardiac cath is an elective procedure.  However this patient
gives all of the signs and symptoms of unstable angina for which he recommends
the cath.  He (Dr. Faulkner) feels that this inmate's medical history may indicate
that he is at end stage cardiac disease for which there is no surgery, only medical
management.  Mr. Elliott is scheduled to go to Beaumont on November 1, 2004.
There is a medical center there.  I will however work to get the cath done before
he leaves."  Pl.'s Suppl., Ex. 1 (10/21/04 e-mail from E. Prince to L. Young).  Dr.
Prince documented the same aspects of her conversation with Dr. Faulkner in an
October 21, 2004 note on Plaintiff's Chronological Record of Medical Care.  *Nov.
13 Op.*, 521 F. Supp. 2d at 53 n.10.

- On October 28, 2004, Dr. Prince made another notation on Plaintiff's
Chronological Record of Medical Care, stating that "inmate Elliott was crying to
other inmates that if he gets on [a] plane he will have [a] heart attack.  He wants to
stay here [at FCI-Forrest City and] get cath study done.  Inmate Elliott through a
petition to court has demanded to be sent to Beaumont.  He was seen by the
cardiologist and his medications were adjusted to control his chest pain on
10/20/04.  Inmate Elliott has not complained of chest pain since he returned

10/20/04.  As discussed in Email - cath study is an elective procedure [and] can be completed at Beaumont.  His medications [have] been adjusted to control his symptoms [and] he has not complained since this adjustment was made."  Def.'s Resp. to Pl.'s Suppl., Ex. A, Attach. 1.

• On October 29, 2004, Dr. Prince signed the Medical Record of Federal Prisoner in Transit, indicating that Plaintiff's angina was stable and that he was to receive a cardiac catheterization within six months.  *Nov. 13 Op.*, 521 F. Supp. at 53 n.10.

Conveniently, Plaintiff did not provide the Court with Dr. Prince's October 28, 2004 notes.  He has not, however, claimed that these notes were not provided to him in discovery.  It therefore appears that Plaintiff (who, while proceeding *pro se* in this matter, was trained as an attorney) has selectively provided the Court with evidence to support his assertion that Dr. Prince "created false medical records" when she signed the Medical Record of Federal Prisoner in Transit.  The complete factual record, however, directly undercuts such a claim, and actually confirms the Court's previous conclusion that the document "accurately reflects Dr. Prince's understanding of Plaintiff's medical condition as of the date she signed the form, October 29, 2004."  *Id.*

As a result, the Court concludes, again, that Plaintiff's original Privacy Act claim regarding his June 2004 initial designation, as well as his proposed amendments to his Privacy Act claim, lack merit.  Most significantly, as the Court has previously explained, "Plaintiff's clear dissatisfaction with the medical care that he received at FCI-Forrest City [and elsewhere in the BOP system] does not make out a violation of a Privacy Act claim," because Plaintiff does not show "that the BOP's maintenance of allegedly inaccurate or incomplete records proximately cause Plaintiff to suffer an adverse determination."  *Id.* at 56.  To recover the damages he seeks in this action, Plaintiff must establish that the BOP intentionally or willfully violated the Privacy

17

Act, by demonstrating conduct that is "so 'patently egregious and unlawful' that anyone undertaking the conduct should have known it 'unlawful.'" *Id.* at 48 (quoting *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Moreover, the Privacy Act's "'intentional or willful' action requirement . . . refers only to the intentional or willful failure of the agency to abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures." *Id.* (quoting *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984) (citing *United States v. Murdock*, 290 U.S. 389, 394-95 (1933)). The record evidence that Plaintiff himself proffered in this action demonstrates that Plaintiff is entirely unable to make such a showing. Ultimately, Plaintiff's claims amount to complaints about the institutions to which he was designated for service, and the medical treatment that he received in those institutions. Plaintiff's claims do not, however, allege that "an agency failed to maintain accurate records, that it did so intentionally or willfully, and consequently, that an 'adverse' determination [wa]s made' respecting [Plaintiff]," and therefore do not constitute claims cognizable by the Privacy Act. *Toolasprashad v. BOP*, 286 F.3d at 576 (D.C. Cir. 2002) (citing 5 U.S.C. § 552a(g)(1)(c)).

## IV.  CONCLUSION

For the foregoing reasons, the Court shall DENY AS MOOT Plaintiff's Motion to Compel and shall DENY Plaintiff's motion for reconsideration. The Court notes that Plaintiff has already appealed this Court's November 13, 2007 Memorandum Opinion and Order to the United States Court of Appeals for the District of Columbia Circuit, *see* Notice of Appeal, Docket No. [96]. The Court suggests that Plaintiff pursue the avenues available to him in that forum, as he has now exhausted the relief available to him before this Court.

Date:    April 21, 2008


Copy to:

    Alfred Elliott
    Reg. No. 97965-024
    FCC Forrest City (Low)
    P.O. Box 9000
    Forrest City, AR 72336

                                        _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge